The last case on this morning's docket is the case of Knoob Enterprises v. Illinois Liquor Control Comm. And we have Mr. Sanders here for the defense and Mr. Snyder here for the acquittal.  Thank you, Marjorie. The facts are set forth in my brief. I would just like to briefly, very briefly, go through them. This involves a liquor establishment being fined by the city of Carbondale. One night, I believe it's back in 2008, a young lady, accompanied by a 21-year-old gentleman, went into the bar using her 19-year-old sister's ID. Once they were in the bar, a 21-year-old leaves the bar with the ID, goes back out, gets his 19-year-old girlfriend, they reuse the ID again, she gains entry. So it's a bar that you can come in if you're of a certain age? I'm not understanding. Part of a 19-year-old limit. So you can come in, but you can't drink? You can't drink, obviously, but you can enter the bar. The girl, the first girl that entered, they talk about her being 15. She was actually two days away from her 16th birthday. This was kind of a birthday present, I guess, to her. And she used her 19-year-old sister's ID, which I would point out, that ID was a driver's license that was issued, according to the evidence, to that 19-year-old 11 days after she turned 16. So the picture on the ID is of a 16-year-old. The girls get in the bar with the 21-year-old. The girls go to the bathroom. The 21-year-old orders him a drink. When the drink arrives, the girls get back from the bathroom. The 21-year-old goes to the bathroom himself. And about three minutes later, the Secretary of State officer approaches the table and issues the girls a ticket for underage possession. Were there any other glasses on the table? What does the evidence show as to, was there a pitcher or a drink and then some soft drinks? Or what was on the table? I think they indicated there was some glass, multiple glasses. The record isn't real clear as to how much alcohol was there. It doesn't say a pitcher. I don't recall, to be honest with you. I may have said that. What we do know from the record, the girls did testify that they never consumed any of the alcohol. They never talked to any waitresses. They never ordered any alcohol. They basically were left to make sure somebody didn't walk away with their friends' drinks. And that's all they had any attention for. The guy did not give them permission to drink. The drinks were not ordered for them. How many drinks were there? That's what I don't recall from the record. I think there was one drink, but it may have been a pitcher, and there may have been multiple glasses. But the best I saw from the record, there was only alcohol in one container. Okay. So it's not like they were walking around the bar. They were sitting in one place while he went to the restroom, and he was the only one that had ordered or was consuming any alcohol. We have several issues that we've approached in our brief of errors that were made during this hearing. I'm going to address the fine first because they were charged with one count of allowing someone under 19 to enter the bar, or the bar was charged with this, and two counts of underage possession. The officer that gave the citations that night testified that he had the authority to issue the bar ticket. However, he did not. Apparently, he didn't see anything that necessitated any acquiescence on the part of the bar. So the tickets were given to the two girls, which the city attorney then gave them immunity for in prosecution in order to file this complaint against the establishment. So no police officer has issued any citation to my client. The charges were under Section 2510A of the Carbondale Code. 2510A in its raw form has to do with entry of the 19 age limit for getting into the bar, and 2510A2 has to do with underage possession. Upon the final hearing, the mayor levied a fine against my client on the underage entry of $2,500 and $1,000 each on the other two charges. The Carbondale Code in Section 2510C says a fine of not less than $500 and not more than $750 for a violation of Subsection A of this section. I don't know how much more clear it gets than that. That's specifying if you're charged under Subsection A of 2510, your fine is limited to $750. Yet they fine them $2,500, $1,000, and $1,000. So we're saying the application of fines here, it just flies in the face of what the Carbondale Code says. Now, they've come up with some analogies of different code sections that say, well, it may be higher, it may be lower. It's kind of like in the state here where we have statute limitations that are specified in statutes. Then we have the catch-all statute that says if it's not mentioned somewhere else, it's five years. It's the same way in Carbondale with regard to fines. You have a catch-all that would allow them to go up to this amount. But in this case, there is a specific section of the area they were charged under, which is 2510, that limits that fine to $750 maximum. The mayor completely ignored that. In addition, Section A3 of the Carbondale Code says in any action for any violation of this section, evidence may be presented which will be considered in mitigation. That the licensee or agent, representative, or employee of such licensee demanded and was presented identification of the type specified in the chapter. And obviously, a driver's license is one of the types specified. Nobody questions that this girl presented an ID, a valid ID, to the doorman. They don't challenge that. They admit that. As a matter of fact, they had to give immunity to this girl under those charges in order to get the testimony. So was there any mitigation considered by the mayor? I don't know. He took the fine and multiplied it by more than three, so I don't think there's any mitigation there. It seems like he not only threw the book at him, he threw it at him about three times. We're also claiming that the wrong standard was used. The city claims in their brief, and we've been through this with the city multiple times, that the standard here is absolute liability. If it happens on your property, you're responsible for it. If someone is in your establishment, they're under 19, you're guilty. I find it interesting that the city claims in their brief, they say that it's clear that the intent of the Carbondale City Council was to establish absolute liability on the part of licensees when a violation occurs. Yet they turn around in another part of their brief dealing with a different issue and quote the city code that says the city shall have the burden of proving by a preponderance of the evidence. The charges alleged against the licensee. That's two different legal standards. The code clearly says it's preponderance of the evidence. It's not absolute liability. In addition, the code section says in Section A that no licensee or any agent representative or employee of such licensee shall permit or allow any person under the age of 19 years to enter or remain on the premises. So what does permit or allow mean? To most of us, that insinuates some kind of acquiescence. It doesn't insinuate if it happens, you're guilty. You had to permit this or allow this to happen. But the key words here are or remain. Because under the theory of strict liability, you're liable the moment they step foot in there. While the words or remain in there. And they're there to anticipate the fact that somebody could somehow gain access. But if you discover them and they're in there, you have an obligation to get them out. You cannot allow them to remain. But under the theory they're proposing to this court, the or remain is pointless because you became liable the moment they stepped foot across that threshold. It makes no sense. In addition, section 2510A2, which is the other section that we're charged with, says no licensee or agent serving a representative of such licensee shall permit or allow any person under the age of 21 to remain on the license premises. Why is that worded that way? Because clearly a person that's 20 could go in with a person that's 21. The older person legally obtains the alcohol and then gives some to the 20-year-old, who is there legally. If that happens, nothing illegal is occurring at that point. But if that happens and the bar discovers it, they have a duty to get them out of there, to remove them. They cannot allow that person to remain in there in possession of alcohol. So, again, under their theory, the moment that person underage touches that alcohol or simply sits at the table where he is without a person over 21 there, they're guilty. In this particular case, there was no evidence to show the bar knew any of this was going on. In fact, from the time the first two walked in the door, after everybody had gone to the bathroom separately, after they had been busted, the entire time span was approximately 15 minutes. The Secretary of State also testified that the bar was extremely crowded at the time. The bar simply didn't see it. Now, if this had gone on for an hour, we probably wouldn't be here because I wouldn't have taken that peek. But in this particular case, it happened so fast that the bar did not have time to respond. But the city says it doesn't matter. It doesn't matter if you act yes or yes. It happened. It happened on your premises. You're guilty. And you're liable. The last thing that we're challenging, and one of the most important things that could have long-reaching effects on Carbondale, is standing in this case. Carbondale Code sets forth a procedure by which administrative complaints are handled. And that's what's important here. This is fully administrative. This was not in a court. Under the Code of Carbondale, complaints would be taken to the Liquor Advisory Board under Section 233D. They investigate it, pass a report on to the full-blown commission on cases that they feel like need to be taken further. They make recommendations. And then it is up to the Liquor Commission itself to prosecute those claims in an administrative form. In this particular case, the city attorney's office has decided to take it upon themselves to do the Liquor Advisory Board's job and to do the Liquor Commission's job. This case was filed by the city attorney's office. And it wasn't filed in the name of the Liquor Commission, which is the administrative body overseeing this. It was filed in the name of the city of Carbondale. Mr. Schneider admitted in Springfield before the commission, the Illinois Liquor Commission, that he did this, and he does not even tell the local Liquor Commission he's doing it. He's completely assumed their jobs, taken them over. And his argument is, well, otherwise, if you allow them to bring their own complaint, then they become judge, jury, and prosecutor. He made that argument in Springfield to the State Liquor Commission and was very quickly informed that's what they do. That's what every administrative agency does. It doesn't quite work that way in a courtroom. As a matter of fact, nothing close to that. But in administrative complaints, if it's, excuse me, if it's, say, the Illinois EPA, if they decide you've got pollution, you get a complaint from the EPA. You don't get a complaint from Lisa Madigan's office unless it is criminal. And then it's filed in a courtroom. Our attorney general's office does not prosecute administrative complaints before administrative bodies. Neither does our federal agencies. All the complaints of governmental administrative agencies are brought by the agencies. They bring the complaint. They try the complaints, and they decide the complaints, but not in court, because the city attorney's office feels like it puts too much on them. He's taken the job away from them entirely. And that's what part of our claim is this complaint was never properly brought by the proper body or by the proper people. Now, he argues that this is within his job description. And the Carbondale Code sets forth the job duties of the city attorney. And I will admit that it says the city attorney is there to advise the city officials on anything of interest to the city. But advising and taking over their jobs is two different things. It also indicates that the city attorney's office does represent the city's interest in a courtroom. This wasn't a courtroom. This is an administrative body. Nowhere in the city attorney's job description in the Code does it give them permission to do anything remotely like this. In addition, it flies completely in the face of the Code sections and says who does have the responsibility for these things, which is the advisory board and the Liquor Commission itself. He also argues in his brief that if he doesn't prosecute this, who will? Nobody else on the Liquor Commission has a license to practice law. Well, the mayor is one of those commissioners, and he's the judge. He doesn't have a license to practice law either. But the point is, in these types of settings, it is akin to someone going in and acting pro se. They bring their own charges, and they prosecute them. And a party is entitled, even in our courtrooms, to represent themselves. So there is no requirement that it be a lawyer representing the city's interest or the commission's interest. This is the job of the commission, not the city attorney's office. And there's no evidence that anybody on the commission ever asked the city attorney to do this. And he admits to the State Record Commission this was all his own decision. He did not even tell them what he was doing. Now, the question begs itself, if the city attorney's office has authority to bring these complaints in court, why didn't they? They could file an ordinance violation, because most people that get cited for an ordinance appear in a courtroom. Maybe a city court, a circuit court. They had the ability to file this in a courtroom, but they chose to file it as administrative. One has to ask, why? Well, it's quite obvious to me, because under the administrative rules, you have relaxed rules of evidence. Let me tell you, the record shows it was pretty relaxed. This girl that was nearly 16 years old, they presented a picture, which was Exhibit E, and presented it to the hearing officer. This girl was halfway through her sophomore year, and the picture they presented was a picture of her when she started the ninth grade. And according to the record, it clearly was presented for your benefit. The hearing officer saw her. He didn't have a problem with what she looked like, because the event that they were there on had occurred about a month before. But the picture they presented as evidence over my objection was clearly, and they stated that this was done to create a record on appeal. This was done to basically prejudice the State Record Commission or you in what this girl looked like. When I first saw this picture, I thought, who is this? What has this got to do with this case? Until I saw the name. Now, if you're as old as I am, a year and a half doesn't make a whole lot of difference. In my picture, I looked old a year and a half ago, and I still do. But I can tell you, when I was starting the ninth grade, my picture looked quite different than it did halfway through my sophomore year. And at that age, we change a lot. And that picture had nothing to do with the case. There was no evidence that it was presented to the doorman. So it was presented solely to prejudice any appellate body that might look at this record. And, yes, we objected to it. Had that been in a courtroom, that piece of evidence would have never gone in. I have serious doubts that any court would have sustained absolute liability. I have serious doubt that any court would have tripled the amount of the fine despite the clear warning of the statute. So there were some reasons to file this for the mayor because the mayor does pretty much what he wants to down here. The prejudice or arrogance or whatever you want to call it by the local commissioner in this one is pretty well stated in the mayor's own decision itself. It was offered by Attorney Sanders for Mr. Noob through statements by Mr. Noob in mitigation of the charges. What page are you on there? I'm on page 17 of my appendix. Got it. This is on his actual decision. Thank you. That the licensee was not liable for the alleged actions, although he has taken steps to improve the situation and his establishment since these alleged events and, therefore, no penalty is warranted. Then he goes on to state, this is the wrong position to take, especially if you have the circumstances at hand, and the evidence presented by the witness is called to testify. Some humility or even the most minuscule degree of self-abasement could go a long way in helping convince the hearing officer that the licensee is serious about running a legal and above-board operation. So, in other words, when the city accuses you of something, if you come in and plead guilty and throw yourself on the mercy of the court, kiss the mayor's feet a bit, and self-abase yourself, then he might consider the things that the law says he has to take into consideration in mitigation of the damages. But if you have the audacity to come in and plead not guilty, he's not going to consider anything in mitigation. In fact, he's going to take the maximum fine, triple it, and then throw that at you. This is why this was filed as an administrative complaint, because had it occurred in a courtroom, which they are authorized to do, we wouldn't be here. We're asking for this court to overturn this decision by the local commissioner and reverse this complaint down. Thank you, Mr. Sanders. We'll take the opportunity to close the file. Mr. Sanders? May it please the court, Mr. Sanders? The standard of review in this case is clearly erroneous. This is laid out in the Kohler and Bailey cases as cited in both the appellant's brief and the appellant's brief. The question comes first. Why did not the appellant object to the complaint at the administrative hearing, and why did he object to the standing of the city to bring the charges in the first place? Why? Because he didn't think there was a problem. He weighs his right to those objections because he felt it was good at the first time it came about. The only time we first heard about any of these objections was at the Illinois Electric Patrol Commission, who said that the local commission acted in accordance with the city ordinance and state law and followed the procedures as laid out in the Illinois Electric Patrol Commission. First, let's look at the argument that the evidence does not support the finding, assuming that we don't believe the waiver is an issue here. The state law requires that you reasonably rely upon the ID that is presented. The testimony was clear that the photos that were submitted, the IDs that were submitted, accurately depicted the girls as they appeared. Keep in mind that the hearing officer actually saw the young ladies in the hearing room, so he knew what they looked like. He had no problem with it, with what the photos showed. The photos were introduced because the courtroom was not being recorded, so there's no way to show what the females looked like that night. It was clear by the testimony of the officer that when he saw the young girl, the 15-year-old, while she may be getting ready to turn 16, by his statements she looked younger than his 12-year-old daughter. She was brown-haired, brown-eyed. The sister was blonde-haired, blue-eyed, both of a different bone structure. The older sister was a heavier-set young lady, while the younger sister was very petite. Clearly visible in the picture, clearly visible to the hearing officer, clearly stated by the officer who made the arrest. The officer who made the arrest was the Secretary of State officer. He was not there enforcing city ordinance violations, he was there enforcing state law. The tickets were issued under state law, referred to the city attorney's office for prosecution as a city ordinance violation. That's when we discovered that a 15-year-old was inside a city liquor license establishment. This comes down to city code, not an issue of state law. That is why we say it is an absolute liability, because our city code in 2510 puts a specific duty upon the licensee. In 2510 it says, paragraph 5, the duty to verify age. They had the duty. They were in there for 15 minutes. It didn't take an officer very long to determine he had a cup of a modern-day possession of alcohol. What was the evidence set to the possession? The 15-year-old had a cup in her hand that contained an alcohol beverage. The 19-year-old was holding the pitcher. There was no evidence, no question to ask how many cups were present. It wasn't pertinent to the discussion. The fact that the older sister had a pitcher was sufficient to prove the charge. And the fact that the 15-year-old had a cup with alcohol beverage in it was sufficient to prove the charge. But there was evidence in their hands. It was not standing at a table. Assuming this was the bar, they were standing within 5 or 10 feet of the bar itself. Back to the absolute liability, you read the portion of the statute that said they had an affirmative duty. To you, that translates absolute liability? Yes. The statute does not anywhere in it, or the ordinance does not anywhere in there, says that it has to do with knowledge. And if you look, the only thing that comes close is the permit or allow. You have to look at what does permit or allow mean. Could this affirmative duty also state that they have to make a reasonable inquiry? To me, that doesn't equate with absolute liability, those words. Correct, but when you put it in with the permit or allow, you have to look at what permit or allow means. The permit or allow has been defined as being acquiesced, and what does acquiesced mean? This is from Merriam-Webster's, to permit it by neglect, oversight, to make possible, or the law. This is an act of neglect. They allowed a 15-year-old to use a, now the person's ID, that she did not look anything alike. But neglect's not absolute liability. That's exactly the opposite of absolute liability. Even if you don't accept the premise that absolute liability is there, there is substantial evidence that they permitted. In fact, they didn't confer any of the evidence that they were in the bar, that they were under 21, and that the 15-year-old was under the age of 19, and that they were in possession of alcohol. They didn't contest any of that. In fact, when asked, their witness stated, yeah, they probably were in the bar. They have an affirmative duty to ensure that people aren't getting in. They have to show that they reasonably relied on that ID in order for her to get in. This ID was used twice in five minutes. While they had been busy in the establishment, the bouncers should have questioned when a little bitty skinny dark-haired girl walks into the door with an ID of a blonde-haired girl who weighs, and I don't know the exact weight, but she weighs substantially more than the younger sister. They should have said, hey, what's your date of birth, or what's your social security number, or some other identifier, so they could determine whether or not this person was the person holding the ID. That's typically what bars do when they think they're being presented with a false ID. But then five minutes later, another person comes in with the exact same ID. Reasonable reliance requires them to have taken steps to ensure that the people getting in are of the age of 21. You can't argue that they reasonably relied. When you look at photos that are in the record, that these two did not look anything alike. The 15-year-old had braces, the 19-year-old did not. Like I said, one was blonde hair, one was brown hair. One was light-eyed, one was dark-eyed. There is substantial evidence that they permitted this person to enter the bar and did so when she was under the age of 19. They permitted her to become in possession of alcohol by not preventing her from coming into the bar. They allowed her to remain on the premises without alcohol. By not having the bar, the bartender not going and saying, hey, you can't be in possession of that. If an officer can see from 10 to 12 feet away immediately that this person is under 19, well-trained bar staff should be able to do the same. Because that's what they go through training for. That's what they're there for. They're there to guard the bar from violations as much as they are to serve. And in this case, they failed to do so. Getting back to my argument. What did the mayor understand the burden was here? Did he acknowledge it as absolute or did he determine it was negligent? I believe, not looking at the order directly, not knowing what you're looking at. I'm looking at the order. I'm just trying to find, but I didn't know how you argued it. I don't think he ever states that it's neglect or absolute liability. He never states an actual – what his – What you argue it was. I argue that it was absolute liability. But then you're all over the board. You're talking about what was reasonable. Because they were arguing that as a defense, that it was a reasonable violence. My argument was, even if you go to the point of saying that it is an affirmative defense, as the state law gives you, under city or cartel law, it's not an affirmative defense. You're saying it wasn't reasonable if you used a neglect standard, but you're saying the standard was absolute liability. He's got on A-16 here, this represents gross negligence and an egregious on the part of the licensee. So there's some indication here that he thought it was something other than absolute liability. And that may be the case. As I say, even if you go beyond the issue of whether it's absolute liability or negligence, it's clear that they permitted a man. There's substantial evidence showing. And this court is not reviewing the facts. And it's actually to give deference to the commissioner's finding. Unless there's against a manifest way a clearly erroneous. And in this case, there is no clear error in this case as far as what the facts are. It's clear what the facts are. Under 15 and both under the 21 possessing alcohol. That's what was at issue before the liquor commissioner. That's what the liquor commissioner found in violation. Going back to my argument, Mr. Sanders keeps trying to bring in the fact that state law gives him this affirmative defense. This is under cartel city ordinance. This is not under the state law. And our city ordinance mirrors more what the state law was back in the 1970s. And in fact, Ryan versus Burbank clearly states it has been as long as it is supported by substantial evidence and is neither arbitrary nor contrary to the manifest way of the evidence. This court has to give deference to what the liquor commissioner saw as far as what the facts are. And in this case, the facts are under 21 in possession of alcohol and under 19 in a bond. Based on the facts, the current revised code finds assessed were appropriate necessary to gain compliance with the law and are within the building structure set out in the current revised code 252, which states imposed by local liquor control commission. Any licensee violating any provision of this title or any application of this code with state statute may be ordered to pay all costs of the city in holding the hearing and shall be subject to any and all the following penalties by the local liquor commission unless otherwise provided in terms of the provisions of this title. A letter of recommend a fine of not more than $1,000 for first violation and not more than $1,500 for a second violation within 12 months period and not more than $2,500. This licensee has had substantial violations over the last 12 months and therefore that is why the progressive fines kept going up. There is a structure set out for licensees as a corporation. A $750 fine to a licensee letting a 15-year-old drink a bar isn't going to stop that from occurring in the future. A $2,500 penalty has that effect. As far as lack of standing on the City Department of the brain of charges, if the City or the Liquor Control Commission, which are the same bodies, one is just a subset of the other. In fact, our Liquor Control Commission is a full panel. It is our entire city council. Our ordinance provides that the chairman of the Liquor Control Commission shall overhear the hearings. Mayor Cole is the chairman of the Liquor Control Commission and therefore he hears any reports brought to him. He accepts the charges or denies the charges upon presentment of those charges. He is the one who sets the notice of hearing. So while I draft documents, they don't go out to the licensee until he has accepted and approved those charges to be brought for him in a court or in the hearing. Mr. Sanger says I have no authority to try this case before the Administrative Hearing Body. Well, the Cardinal City Code clearly states that the city attorney is to prosecute and represent the city council, the city manager, city officers, and all matters of law where an interest of the city is involved. The city attorney shall prosecute or defend or possibly prosecute or defend all suits to which the city is a party in any court. We as attorneys see this as a courtroom. But if you look at what Black's Law Dictionary says, what is a courtroom? A courtroom is any body of government delegated the authority to administer justice. It is not an administrative hearing. While it may not be a formal court of law like we as attorneys are used to, it is a court. And that is the way this part is interpreted by the city is we are representing the city in a court. In fact, the Cardinal City Code requires the city to have the burden of proof. Well, if the city of Cardinal doesn't have the burden of proof, then they don't bring the charges. Then they don't do anything. Nobody would ever do anything. There would be no way to enforce the ordinances of the City Code of Cardinal. The very first code section in the City of Cardinal says that these ordinances are supposed to be interpreted in the light to allow for justice to be done. And in this case, if you do a strict reading of this ordinance, the functions of the city attorney's office, and you take that broad language at the beginning of our code, you can see where the city attorney's office has this. The way I have done it has been the way my predecessors have done it. The way I was trained to do this is I was told I had to draft up a complaint, just like a state's attorney's office would, just like an attorney general's office would, just as Richard Haymaker would do for the Illinois Veterans Patrol Commission. Draft up a complaint. I signed it. Send it out. Send it up to the commission. They either accept or reject and set it for a hearing. And in this case, they accepted it, set it for a hearing. We held a hearing. And, in fact, in the record, the hearing officer said he accepted the complaint, thereby adopting what I had done. I have one question. Yes. Does Cardinal have an attorney who sets as a hearing officer for ordinance violations only? No. Most of our ordinance violations other than liquor code violations for licensees. I'm just talking about ordinance violations. No, we do not have an administrative remedy process for city code violations. Some cities do. Yes. Okay, thank you. The way we do it is our city code violations, the person who gets an underage consumption ticket. I'm not necessarily talking about that. I'm just talking about ordinance violations in general. No. Okay. This is the only thing we have administrative hearings for. This is the only workplace that we provide for administrative hearings. This is the only instance where it's ever been used for. And that's because the state gives us local control. The local control commissioner is supposed to be the one who handles these. And the way the state law is set up, there's an appeals process for those type of hearings that is a lot quicker than going through the regular court procedures. It saves everybody a lot of time and effort in this situation. But as far as lack of standing, the city attorney's office is the sole legal representative of the city of Carbondale. While the state has a liquor control commission attorney, an attorney general's office, and a state's attorney's office, my department is all three of those bound into one because we have to represent every aspect of the city of Carbondale. There's only two boards that are specifically given authority to hire an attorney. And those are because they are set up specifically by state statute. Those are the fire prevention board and the police prevention board. Those are the only two boards that are permitted to have outside counsel. And that is because a lot of times there's an adversary procedure before them in which the city may be taking up a different position because of the firing of an employee. And the state requires that. As far as the issue of the fine, whether you find that the fine that was assessed is provided by statute or not provided by statute or by ordinance doesn't matter. The facts are the same. The most this court would have authority to do if the court decides that the fine was not properly assessed would be to send this back to the local commission for resentencing on the fine level. But the court would have to find that it was clear error on the part of the commission to impose those fines. And I submit to you that you cannot find that there was clear error in this case. The facts are overwhelming against the licensing. Are you saying then that we don't have the power under Rule 366 to do what the lower court could do? My understanding of what the role of this court is in an appeal is that the only true issue on appeal is whether or not the local commissioner abused his discretionary power and whether or not he acted arbitrarily and without good cause. That comes from the Kohler case, which is 938 Northeast 2nd, 1168. This court is only to look at whether or not the authority of the court was – or whether the commission abused his discretion. And absent that, the court – there's nothing else for the court to do other than remand it for the resentencing the way I read the case law. If this court were to say that the fine, it should not exceed $750, I can tell you the city is not going to jump up and scream and holler that this court imposed a $750 fine on this licensee for each one of these events. This licensee no longer holds a license in the city of Carbondale. And this issue has – as far as it will ever apply to this license again – is moved. And the city would not have a problem with that. And in fact, we recommend it to do so. Thank you, Your Honor. Thank you, Mr. Snyder. Mr. Sanders, do you have any rebuttal? Mr. Sanders, do you have any opinion as to Rule 366? No, sir. Point out just something that was said here that was just forwarded to me that – indicating that my client had had numerous violations in the past. My client's record was presented to the local district commission as part of the record. It was Exhibit F in that record and clearly indicates that my client had had only one prior violation over a year before this one. And one of the charges was dismissed and the other one came out with a letter of reprimand. That's on page 168 of the record. So to say that my client had had numerous violations is just – I don't know where that's coming from. Mr. Snyder talks about he was told – I don't think that's in the record anywhere. It brings up Mr. Rick Haymaker's name, who is the attorney for the State Liquor Commission. But I've got plenty of those and I can tell you Mr. Haymaker doesn't sign those complaints. Those complaints are not brought in the name of the state or people of the state of Illinois. They're not signed by Mr. Haymaker. They're brought in the name of the Illinois Liquor Control Commission and they are signed by one of the commissioners of that administrative body, which is completely reversed from what we've got here. He talks about this picture that was presented that night. But if you notice in the record, the police officer that was there to testify never identified that picture. The only person identifying that picture that said, yeah, that looked like me the night, was a scared 16-year-old girl who has been given immunity from prosecution in order to get her testimony against this establishment. Did her hair change color or did somebody put braces on her? Now, that's a time in your life that, yeah, you might get braces put on, you might get them taken off. There's nothing in the record that shows that she walked up to the doorman and smiled that he even knew she had braces. I think I brought up there, it might not have been an appropriate way to put it, but I think I made some comment that young girls at that age change their hair color about as often as the young boys change their underwear. So what, if her hair color was this and that? The bottom line is the picture that doorman was staring at was of a girl 16 years and 11 days old, and the girl standing in front of him presenting that was two days away from being 16. The picture and the girl standing in front of him were less than two weeks apart because it was the other sister's original driver's license issued to her 11 days after her 16th birthday. No, we didn't contest certain things because, quite honestly, we didn't even know this had happened until we got the administrative complaint in the mail. This whole thing took place without the bar even being told that it had happened. The police officer took the girls outside, gave them a citation and sent them home. And he said, no, I didn't tell anybody. So we didn't even know it had happened. Even a month after the event, we didn't know these girls had been given a ticket. He complains that maybe the doorman should have asked, what's your date of birth? Well, I'm not going to pass to my sister. I will admit that. But if I had a brother, I know I know what my sister's birthday is. So if somebody asked me, what's your date of birth? I probably could have recited it. Most of us probably didn't. So I don't know what that's going to accomplish. She knows she's using an ID and may be subject to being asked about information on it. So does that mean that if they had asked her that and she had given the right answer, that it's okay to let her in there? Bottom line is, this is an administrative hearing and they did not follow any of this. Obviously, what happened there is an administrative hearing. They didn't follow any of the procedures required under their ordinance to carry this through. I was kind of amazed to hear that we now have a new definition that would make an administrative hearing a courtroom. That shows I understand that courts should give some liberal instruction to how cities draft their ordinances, but to say that the ordinance says you have authority in a courtroom and now to say that automatically translates to making decisions on behalf of administrative bodies, that's just absurd. That administrative body was specifically given their authority by the Carbondale Code. They were charged with carrying it out and they were not even told this was going on. And this case needs to go away. One last thing, Your Honors. I'm glad the city's not going to jump up and down if we reduce the fine because tomorrow morning we're in court on the small claims because they have sued us for the $4,500. Thank you, Mr. Sanders.